UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| SAMANTHA GRAF, | ) |
| | ) |
| *Plaintiff*, | ) Case No. 2:22-cv-70 |
| | ) |
| v. | ) |
| | ) Judge Atchley |
| MORRISTOWN-HAMBLEN HOSPITAL | ) Magistrate Judge Wyrick |
| ASSOCIATION, | ) |
| | ) |
| *Defendant.* | ) |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Morristown-Hamblen Hospital Association's Notice and Motion Pursuant to Federal Rule of Evidence 412 [Doc. 166]. In accordance with Rule 412, the Court conducted an *in camera* hearing at which the parties and Plaintiff Samantha Graf were given the opportunity to be heard. For reasons that follow, the Motion [Doc. 166] will be **GRANTED IN PART** and **DENIED IN PART**. Because the issues presented by the Motion [Doc. 166] overlap with Plaintiff's Motions in Limine [Docs. 117 & 138], those Motions are **DENIED AS MOOT**.

The Court reminds the parties that because "a ruling on a motion in limine is subject to change as the case unfolds, this ruling constitutes a preliminary determination in preparation for trial." *Savage v. City of Lewisburg, Tenn.*, 2014 WL 5089940, *1 (E.D. Tenn. Oct. 9, 2014) (cleaned up, citation omitted).

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Samantha Graf is a former employee of Defendant Morristown-Hamblen Hospital Association ("MHHA"). Thomas Ogle is a former security guard for Shield and Buckler Security, Inc. ("SBSI"), who worked at the same Hospital as Graf. Graf alleges Ogle sexually assaulted her

during a lunch break in June 2021. [*See* Doc. 151 at 25]. Ogle testified the encounter was consensual. Graf reported her allegations to other SBSI officers in late October 2021. SBSI relayed Graf's allegations to MHHA, who asked Graf to discuss them. In a meeting with HR Specialist Edith Carmack, Graf recounted her allegations. Carmack testified that, after speaking with Graf and reviewing SBSI's incident report, she believed that what Graf reported as an assault was in fact a consensual sexual encounter. Carmack recommended she be terminated because "[b]y her own admission" she had sex on Hospital property while on the clock. That recommendation was accepted.

In the months between the encounter and Graf's assault report, Graf and Ogle exchanged several thousand text messages and an unknown number of Facebook messenger communications. Graf and/or Ogle deleted these communications and only a few photographs and videos remain. Graf testified that she sent Ogle sexually explicit images at his request. She testified that he demanded them and she acquiesced to avoid upsetting him since they had to work together.

Graf claims MHHA retaliated against her for reporting the assault, in violation of Title VII and the THRA. She also asserts a claim for negligent infliction of emotional distress premised on the Hospital's treatment of her surrounding her termination. In addition to front pay and back pay, Graf seeks damages for physical and psychological pain and suffering, loss of enjoyment of life, emotional suffering and grief, and physical and mental impairment. [Doc. 50 at 12].

MHHA now seeks to introduce at trial evidence that Plaintiff contends is prohibited by Federal Rule of Evidence 412, including the explicit photos and videos Graf sent to Ogle. Plaintiff opposes admission, arguing these images have no relevance to the claims remaining in the case and are being offered to embarrass and humiliate Graf.

## II. FEDERAL RULE OF EVIDENCE 412

In a case involving alleged sexual misconduct, FRE 412(a) makes the following evidence inadmissible:

(1) evidence offered to prove that a victim engaged in other sexual behavior; or

(2) evidence offered to prove a victim's sexual predisposition.

Fed. R. Evid. 412(a). A "victim" includes an alleged victim. Fed. R. Evid. 412(d). In a civil case, the court may nonetheless admit evidence offered to prove a victim's sexual behavior or sexual predisposition "if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Fed. R. Evid. 412(2). Evidence of a victim's reputation is admissible "only if the victim has placed it in controversy." *Id.*

Rule 412 also includes specific procedural requirements: it requires the party intending to offer the evidence to file a written motion at least 14 days before trial describing the evidence it seeks to introduce. Fed. R. Evid. 412(c)(1)(a). It requires the Court to conduct an *in camera* hearing and "afford the victim and the parties a right to attend and be heard." *Id.* These procedural requirements have been satisfied.

As the United States Court of Appeals for Eighth Circuit has observed, "limiting evidence of a victim's 'other sexual behavior' serves a number of legitimate interests, including preventing harassment and embarrassment, thwarting an unwarranted intrusion into a victim's private life, and warding off a thinly veiled credibility attack." *United States v. Zephier*, 989 F.3d 629, 636 (8th Cir. 2021) (cleaned up, internal citations and punctuation omitted). The Advisory Committee Notes explains that Rule 412 "reverses the usual procedure spelled out in Rule 403 by shifting the burden to the proponent to demonstrate admissibility rather than making the opponent justify exclusion of evidence." Fed. R. Evid. 412, 1994 Advisory Committee Notes.

## III. ANALYSIS

Defendant moves to admit (1) Graf's communications with Ogle and other SBSI security guards, including sexually explicit images and video; (2) evidence of Graf's sexual history after the alleged assault; (3) medical records referencing her sexual history; (4) evidence of her prior history of trauma. Defendant argues that much of this evidence, including Graf's communications with Ogle and other SBSI security guards, is not covered by Rule 412 in the first place because it is not evidence of "other sexual behavior," but is part and parcel with Graf's sexual harassment allegations. Defendant contends that her sexual activity following the alleged assault goes to her damages, substantive NIED claim, and impeachment. Similarly, Defendant contends Graf's medical records are relevant because they show the chronology of her symptoms, when she reported the assault, and that she had previously reported similar conditions / symptoms. As to Graf's history of trauma, Defendant argues that without knowing that Graf had experienced abuse/trauma in the past, the jury might rely on her symptoms to demonstrate causation and assume damages not attributable to the alleged incident with Ogle.

Plaintiff agrees that some of Graf's medical records, with appropriate redactions, are relevant and admissible. She urges that unrelated medications, diagnoses, and prescriptions are irrelevant, potentially prejudicial, and should be excluded. She further agrees that some evidence that Graf was the victim of abuse in the past is relevant, but that it must be placed in the proper context and should not be overly detailed. As to her communications with Ogle and other SBSI security guards, Graf contends this evidence is extremely harmful and moreover, irrelevant to her remaining claims. She argues that the fact that she began a new relationship shortly after discontinuing communications with Ogle is also prejudicial and not probative. Plaintiff argues that

4

the remaining evidence is either irrelevant generally or inadmissible under Rule 412. The Court will address these categories of evidence in turn.

### a. Graf's Communications

Defendant seeks to admit (1) sexually explicit images and videos Graf sent to Ogle, and (2) evidence that she told other security guards about her interest in the "BDSM" or "dominant/submissive" lifestyle. MHHA contends that these communications are not "other sexual behavior" and that even if they are, their probative value substantially outweighs the danger of harm or unfair prejudice to Ms. Graf. Plaintiff contends that since her hostile work environment claim was dismissed, she does not have to demonstrate that she was sexually harassed within the meaning of Title VII to prevail on her retaliation claim. She further contends that her sexual predisposition is wholly irrelevant to whether she consented to Ogle's advances. Graf's communications with Ogle and her communications with others present separate issues, so the Court turns first to her communications with Ogle.

### i. Reasonable and Good Faith Belief Requirement

Plaintiff's primary argument is that whether the encounter with Ogle was consensual is no longer at issue because her hostile work environment claim was dismissed. So it is critical to establish what Graf must prove to the jury to prevail on her retaliation claim. Graf argues that her retaliation claim does not require her to show that her opposition conduct was based on a reasonable and good faith belief that her allegations constituted a Title VII violation.

The Sixth Circuit has clearly held to the contrary: "[I]n order to obtain Title VII's retaliation protections, [Plaintiff] must have had 'a reasonable and good faith belief' that the harassing acts [she] was reporting were Title VII violations." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012); *see Johnson v. University of Cincinnati*, 215 F.3d 561, 579-80

5

Case 2:22-cv-00070-CEA-CRW   Document 195   Filed 07/16/24   Page 5 of 20   PageID #: 4774

(6th Cir. 2000) ("The EEOC has qualified the scope of the opposition clause by noting that the manner of opposition must be reasonable, and that the opposition be based on a 'reasonable and good faith belief that the opposed practices were unlawful."); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009) ("A plaintiff must demonstrate that her opposition was reasonable and based on a good-faith belief that the employer was acting in violation of Title VII."); *accord Downing v. Life Time Fitness*, 483 F. App'x 12, 17 (6th Cir. 2012); *see also Mattson v. Caterpillar*, 359 F.3d 885, 890 (7th Cir. 2004) ("[T]he good faith, reasonableness requirement applies to all Title VII claims.").[1] In other words, a "reasonable and good faith belief" is part of the protected conduct element of her opposition clause retaliation claim. *See Ayala v. Summit Constructors, Inc.*, 788 F. Supp. 2d 703, 721 (M.D. Tenn. 2011) ("[I]t is clear that a reasonableness requirement does apply to the opposition clause."); *Stewart v. Orion Fed. Credit Union*, 2014 WL 12664812, *4 (W.D. Tenn. Feb. 11, 2014) ("Section 2000e-3(a) requires that the Plaintiff's protected conduct be in good faith.").

The reasonable and good faith belief standard does not require that the employee be correct that the reported conduct is in fact a Title VII violation. "A person opposing an apparently discriminatory practice does not bear the **entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful.**" *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312-13 (6th Cir. 1989) (emphasis added); *see EEOC v. HP Peltzer Auto. Sys., Inc.*, 2018 WL 3723708, *3 (E.D. Tenn. Aug. 3, 2018) ("The employee only must have a 'reasonable and good faith belief' that the conduct was unlawful – that is, even if the conduct is ultimately found to be lawful, an employer can still violate the Title VII retaliation provision.").

---

[1] There appears to be disagreement between the circuit courts as to whether a retaliation claim premised on the participation clause has a reasonable and good faith belief requirement. Plaintiff expressly represented that her claim is not premised on the participation clause, but the opposition clause, [Doc. 112 at 20], so the Court has no occasion to address this distinction.

6
Case 2:22-cv-00070-CEA-CRW   Document 195   Filed 07/16/24   Page 6 of 20   PageID #: 4775

So contrary to Defendant's suggestion [Doc. 166 at 8], Plaintiff does not have to prove that she was subjected to sexual harassment within the meaning of Title VII, only that she believed in good faith that she was.

In *Wasek*, the Sixth Circuit explained how the "reasonable, good faith belief standard" can arise in different contexts. When a plaintiff cannot satisfy that standard, "an unreasonable mistake of law is generally the problem," such as an employee's mistaken belief that Title VII requires adoption of an affirmative action program. *Wasek*, 682 F.3d at 469. "In other cases, there are not facts from which a plaintiff could have reasonably believed that a violation occurred." *Id.* These cases tend to involve behavior that is plainly insufficient to constitute harassment or discrimination. The facts in *Wasek* presented a "different" scenario. There, the plaintiff could not show he was subjected to a hostile work environment based on sexually-charged conduct and unwelcome physical contact from another man. He failed to present evidence to satisfy the standard for proving same-sex sexual harassment. But that did not prevent the Court from finding that he reasonably and in good faith believed that he was subjected to sexual harassment. So we know from *Wasek* that the "reasonable and good faith belief" inquiry adapts to the facts of the case.

While not at issue in *Wasek*, other cases address the situation here: a direct fact dispute about whether the reported conduct in fact occurred. The Eighth Circuit has aptly framed the issue:

> It cannot be the case that any employee who files a Title VII claim and is disbelieved by his or her employer can be legitimately fired. If such were the case, every employee could be deterred from filing their action and the purposes of Title VII in regards to sexual harassment would be defeated. However, it also cannot be true that a plaintiff can file false charges, lie to an investigator, and possibly defame co-employees, without suffering repercussions simply because the investigation was about sexual harassment. To do so would leave employers with no ability to fire employees for defaming other employees or the employer through their complaint when the allegations are without basis in fact.

*Gilooly v. Missouri Dept. of Health and Sr. Servs.*, 412 F.3d 734, 740 (8th Cir. 2005) (reversing judgment in favor of employer on retaliation claim). As the *Gilooly* court recognized, differentiating between these two extremes is difficult at summary judgment. And in *Gilooly*, the "protected activity" element was not challenged. Instead, the court was discussing whether the defendant had articulated a legitimate, non-discriminatory reason for the plaintiff's termination. Still, the court found that the accuracy of the employee's report involved credibility determinations that were not fully developed at summary judgment "and best left to a fact-finder to decide." *Id.* at 741. It therefore reversed the district court's entry of summary judgment for the employer, leaving the issue for trial.

Two other circuit courts have taken a similar view. In *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896 (4th Cir. 2017), the Fourth Circuit held: "The opposition clause does not protect the making of a knowingly false allegation." *Id.* at 901. Instead, "for an employee's report of information purportedly relating to a Title VII violation to be protected under the opposition clause, the employee must subjectively believe that the facts she is reporting are true." *Id.* Thus, "an employee who complains of conduct that she knows did not actually occur is not 'opposing any practice made an unlawful employment practice by Title VII.'" *Id.* (cleaned up).

The Seventh Circuit has similarly explained that "Title VII was not designed to arm employees with a tactical coercive weapon under which employees can make baseless claims simply to advance their own retaliatory motives and strategies." *Mattson*, 359 F.3d at 890. In *Mattson*, the court found that the employee's complaint was "not only unreasonable and meritless, but also motivated by bad faith." *Id.* at 892. It therefore held that his claim "is not deserving of

8
Case 2:22-cv-00070-CEA-CRW Document 195 Filed 07/16/24 Page 8 of 20 PageID #: 4777

protection under the participation clause of Title VII" and affirmed dismissal on summary judgment. *Id.*[2]

Indeed, U.S. District Judge Thomas A. Varlan addressed an analogous situation in *EEOC v. HP Peltzer Auto. Sys., Inc.*, 2018 WL 3723708, *3 (E.D. Tenn. Aug. 3, 2018), where he denied an employer's motion for summary judgment on a Title VII retaliation claim. In *HP Peltzer*, the employee reported two comments made by her manager as sexual harassment. She gave the names of three coworkers who supposedly heard these comments. When her employer interviewed the witnesses, all three denied hearing what plaintiff reported. Finding no evidence to support her allegations, the defendant determined she had filed a false complaint and terminated her employment.

Judge Varlan found there was a fact dispute as to whether the plaintiff believed the alleged misconduct violated Title VII and denied summary judgment to the employer on her retaliation claim. The parties agreed she was fired because she filed a complaint of sexual harassment. But defendant's witnesses said the complaint was false – that the underlying incidents never happened. Plaintiff maintained her complaint was true. Judge Varlan explained: "It is not the role of the Court to determine whether this interaction actually happened or to evaluate the credibility of [plaintiff] – that is a job left to the factfinder." *Id.* at *5.

So too here. The jury will be tasked with determining whether Graf engaged in protected conduct. Part of that inquiry is whether her opposition was based on a reasonable and good faith belief that she was reporting a Title VII violation. *See HP Peltzer*, 2018 WL 3723708 *3 ("[T]he

---

[2] Note that in *Mattson*, the court addressed the distinction between opposition conduct and participation conduct, but held that both types of conduct are subject to a reasonable, good faith requirement. In the Sixth Circuit, it is unclear whether participation conduct is also subject to a reasonable and good faith requirement. *See, e.g., Ayala v. Summit Constructors, Inc.*, 788 F. Supp. 2d 703, 719-22 (M.D. Tenn. 2011) (discussing Sixth Circuit precedent regarding application of good faith and reasonableness requirement to participation and opposition clause retaliation claims). *Mattson* is nonetheless illustrative.

question is still whether the employee subjectively believed that the violation had occurred."); *see also Malouf v. Detroit Medical Center*, 2012 WL 6932153 (E.D. Mich. Aug. 7, 2012) (plaintiff's accusation of coerced sexual relationship, which he later admitted was consensual, supported a finding that his HR complaint was not based on a good faith belief that his employer violated Title VII). Ms. Graf reported sexual harassment / assault to MHHA. "[T]he gravamen of *any* harassment claim is that the alleged misconduct was unwelcome." *Blake v. MJ Optical, Inc.*, 870 F.3d 820 (8th Cir. 2017) (cleaned up, citation omitted); *see also Southern v. Posen Const., Inc.*, 523 F. App'x 352 (6th Cir. 2013) (affirming dismissal of quid pro quo sexual harassment claim because "a jury could not find [defendant's] advances were unwelcome"). What *Mattson*, *Gilooly*, *CavaMezze Grill*, and precedent in this District all suggest is that a retaliation claim does not insulate a plaintiff from inquiry into the veracity of their underlying sexual harassment report. The Sixth Circuit has repeatedly stated that good faith is required to prevail on a retaliation claim premised on opposition conduct. The severity of Plaintiff's allegations does not change this legal requirement.

Plaintiff's remaining arguments to the contrary are unpersuasive. Plaintiff rightly points out that rape is perhaps the most severe form of sexual harassment, so there is no question that it would violate Title VII. First, Plaintiff's argument is a straw man – no one disputes that a reasonable person could believe rape constitutes sexual harassment. The question Defendant raises is whether Ms. Graf subjectively believed she was raped. Second, as the Sixth Circuit explained in *Wasek*, a challenge to the plaintiff's reasonable and good faith belief can come in different forms. And courts have recognized that this requirement has both a subjective and objective component. *See Mattson*, 359 F.3d at 889 ("[T]he sexual harassment charge . . . was both objectively and subjectively unreasonable, as well as made with the bad faith purpose of retaliating

against his female supervisor."). Accepting Plaintiff's argument collapses the separate requirements of good faith and reasonableness.

Plaintiff also argues that the *McDonnell Douglas* burden-shifting framework does not apply at trial. True enough, but this does not change the legal requirement that Plaintiff engage in protected conduct to prevail on her retaliation claim. Indeed, Plaintiff's proposed jury instructions would require her to show that she engaged in protected activity. [Doc. 183 at 23]. As the Court has explained, a reasonable, good faith belief is part of the "protected conduct" element of a retaliation claim premised on opposition conduct. The pattern civil jury instructions for the Fifth, Seventh, and Eleventh Circuits confirm this understanding. Each of these pattern instructions either includes a good faith instruction for opposition claims or provides a modified/additional instruction for when good faith is at issue in the protected conduct inquiry. In order to prove she engaged in protected activity, Ms. Graf must therefore prove she had a good faith belief that her encounter and/or communications with Ogle constituted sexual harassment under Title VII. This burden is part of her retaliation claim. Whether an encounter is welcome or unwelcome is, in turn, highly relevant to whether it constitutes sexual harassment, such that Graf could have formed a good faith belief that it was unlawful.[3]

Plaintiff next argues that Graf has consistently stated the encounter was not consensual but a sexual assault, so there is no reason for MHHA to raise the issue. Plaintiff argues that Graf would not have subjected herself to the pain and potential embarrassment of coming forward with sexual assault allegations if those allegations were untrue. But these arguments do not change the legal requirements of her claims. They instead ask the Court to make an improper credibility determination. Finally, Plaintiff contends that the pictures are not relevant because MHHA never

---

[3] Because Graf's NIED claim is premised on the manner of her termination and her negligence claim has been dismissed, it seems unlikely that the photographs remain relevant to any breach of duty by MHHA.
11

against his female supervisor."). Accepting Plaintiff's argument collapses the separate requirements of good faith and reasonableness.

Plaintiff also argues that the *McDonnell Douglas* burden-shifting framework does not apply at trial. True enough, but this does not change the legal requirement that Plaintiff engage in protected conduct to prevail on her retaliation claim. Indeed, Plaintiff's proposed jury instructions would require her to show that she engaged in protected activity. [Doc. 183 at 23]. As the Court has explained, a reasonable, good faith belief is part of the "protected conduct" element of a retaliation claim premised on opposition conduct. The pattern civil jury instructions for the Fifth, Seventh, and Eleventh Circuits confirm this understanding. Each of these pattern instructions either includes a good faith instruction for opposition claims or provides a modified/additional instruction for when good faith is at issue in the protected conduct inquiry. In order to prove she engaged in protected activity, Ms. Graf must therefore prove she had a good faith belief that her encounter and/or communications with Ogle constituted sexual harassment under Title VII. This burden is part of her retaliation claim. Whether an encounter is welcome or unwelcome is, in turn, highly relevant to whether it constitutes sexual harassment, such that Graf could have formed a good faith belief that it was unlawful.[3]

Plaintiff next argues that Graf has consistently stated the encounter was not consensual but a sexual assault, so there is no reason for MHHA to raise the issue. Plaintiff argues that Graf would not have subjected herself to the pain and potential embarrassment of coming forward with sexual assault allegations if those allegations were untrue. But these arguments do not change the legal requirements of her claims. They instead ask the Court to make an improper credibility determination. Finally, Plaintiff contends that the pictures are not relevant because MHHA never

---

[3] Because Graf's NIED claim is premised on the manner of her termination and her negligence claim has been dismissed, it seems unlikely that the photographs remain relevant to any breach of duty by MHHA.

saw them, but simply heard about their existence. Regardless of what MHHA knew, they are probative of Graf's state of mind.

> ii. <u>Admissibility of Graf's Communications</u>

With this legal framework established, Graf's communications with Ogle appear to fall outside the ambit of Rule 412. In a civil proceeding "involving alleged sexual misconduct," the Rule prohibits evidence "that a victim engaged in <u>other</u> sexual behavior." Fed. R. Civ. P. 412(a) (emphasis added). Graf reported both the alleged assault and Ogle's request for pictures to the Hospital. [Doc. 119-11]. "To the extent Plaintiff engaged in any sexual behavior towards or with [Defendant], however, such evidence would not fall within the prohibition of Rule 412(a), in that it would not be 'other sexual behavior' than is at issue in this lawsuit." *Harness v. Anderson Cnty., Tenn.*, 2019 WL 8405381, *1 (E.D. Tenn. Oct. 23, 2019). Graf's communications with Ogle are part of the "alleged sexual misconduct" in this case, not "other sexual behavior" by Graf.

Yet even if Rule 412 applies, the nature, duration, and extent of Graf's communications with Ogle following the alleged assault are highly probative of material issues in this litigation. *See Ammons-Lewis v. Metro. Water Reclamation District of Greater Chicago*, 488 F.3d 739, 746 (7th Cir. 2007) (in the sexual harassment context, "the existence of a current or former social relationship between the harasser and the harassee can shed light on . . . whether the complained-of conduct was unwelcome"). The record shows that Graf continued communicating with Ogle for months after the incident. These communications appear to have stopped only about a week before she first told anyone about the encounter, reporting it as sexual assault. Her communications included sexually explicit photographs.

As MHHA argues, those photographs show not only the extent of her engagement with Ogle, but her demeanor. In the absence of the messages between Ogle and Graf, this is the only

12
Case 2:22-cv-00070-CEA-CRW Document 195 Filed 07/16/24 Page 12 of 20 PageID #: 4781

documentary evidence of their interactions. It is relevant to whether Graf willingly participated in sexually-charged communication with Ogle and, by extension, relevant to whether their June 2021 encounter was consensual. Evidence of voluntariness and consent is critical to Graf's position throughout this litigation: that her sexual interactions with Ogle were forced or coerced. It also goes to the heart of MHHA's position in this case – that Graf was terminated after she had consensual sex on Hospital property. If Graf cannot show that she engaged in protected conduct under Title VII, she cannot prevail on her retaliation claim. The probative value of the photographs thus substantially outweighs the danger of harm or unfair prejudice to Ms. Graf.

The videos are another matter, as counsel for MHHA appeared to recognize at the *in camera* hearing. While MHHA may elicit testimony that Graf sent Ogle sexually explicit videos, the videos themselves are inadmissible. The fact of the videos goes to the degree of Graf's engagement in sexually-charged conduct and communications with Ogle and the voluntariness of her participation. This would include basic facts about the videos, e.g., their length, when they were sent to Ogle, and their <u>general</u> content. The videos themselves, however, do not demonstrate Graf's demeanor and the danger of harm to Ms. Graf is so great that it outweighs any probative value the videos may have. Similarly, detailed descriptions of what the videos depict has little relationship to the issues in this case and will not be permitted.

In so ruling, the Court warns that MHHA will not be allowed to use this evidence gratuitously. Should it appear to the Court that MHHA is using or referencing the images for any improper purpose, such as to embarrass or humiliate Graf or attack her character or reputation, the Court will entertain a timely objection outside the presence of the jury and take any corrective action it deems necessary. The parties will also be required to submit a limiting instruction to ensure that the jury considers these images only on the issue of whether Graf in good faith believed

that her encounter with Ogle constituted sexual harassment. In considering this issue, the parties are reminded that while Graf must prove a good faith report to prevail on her retaliation claim, the law is clear that she does not have to separately prove sexual harassment under Title VII. *See Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015) ("[A]n employee who opposes a hostile work environment need not prove that the environment complained of was actually hostile in order for the employee to receive protection from retaliation under Title VII."). In some cases, there will be a distinction between the truth of a plaintiff's charges and her belief in the truth of her charges. That distinction requires threading a very fine needle here, but it appears to be the law in the Sixth Circuit.

Next, MHHA seeks to introduce evidence that Graf communicated her interest in the BDSM lifestyle to other coworkers / SBSI security guards. These communications have no relevance to whether her encounter with Ogle was consensual and thus have no bearing on whether her allegations were made in good faith. They are precisely what Rule 412 prohibits – evidence of sexual predisposition, offered to suggest that because Graf was generally interested in a certain type of sexual activity, and she must have welcomed it from Ogle.

The cases Defendant relies on to support admission of this evidence are largely inapposite because they relate to a plaintiff's sexual behavior in a public workplace, not to private communications with coworkers. *See Browne v. Signal Mountain Nursery, L.P.*, 286 F. Supp. 2d 904 (E.D. Tenn. 2003) (explaining that "public sexual behavior the plaintiff engaged in while at work" may be relevant to a sexual harassment claim because "how a person behaves in the work place is probative of how she perceives certain public behavior, while private behavior is irrelevant to such a determination"); *Savage v. City of Lewisburg, Tenn.*, 2014 WL 5089940 (M.D. Tenn. Oct. 9, 2014) ("Numerous courts in the Sixth Circuit and elsewhere have found that a plaintiff's

sexual behavior in the public workplace is relevant to sexual harassment and hostile work environment claims because it is probative as to whether the alleged conduct is unwelcome."). Graf's communications with other coworkers were not public workplace behavior. And her sexual assault allegations center squarely on Ogle, so any sexual preferences or interests she may have conveyed to others are irrelevant to her claims. *See Ammons-Lewis v. Metro. Water Reclamation District of Greater Chicago*, 488 F.3d 739, 746 (7th Cir. 2007) ("A person's private and consensual sexual activities do not constitute a waiver of his or her legal protections against unwelcome and unsolicited sexual harassment at work.") (citation omitted, cleaned up). Defendant's motion will be denied in this regard. As the Court has explained, Graf's communications with Ogle about her sexual predispositions are not "other" sexual behavior excluded under Rule 412.

A final word about this evidence. Graf presumably never anticipated the photographs she sent to Ogle would be the focal point of evidentiary rulings in a federal lawsuit against her former employer. It is safe to assume she never anticipated they would be presented to a jury of her peers. Whatever her reason for sending them, they are undoubtedly sensitive materials. Only after extensive review of the caselaw and careful consideration does the Court find they are admissible under Federal Rule of Evidence 412.

b.  **Sexual Activity Following the Assault**

MHHA next moves the Court to allow admission of evidence that Graf began a new romantic relationship in or about November 2021.[4] MHHA also seeks to introduce evidence that in December 2021, Graf stated at a medical appointment that she had been sexually active with one new partner "over the last few months." MHHA contends this is relevant to Graf's NIED

---

[4] As Plaintiff points out, MHHA's briefing on this issue is somewhat confusing. MHHA asserts that Graf's "sexual history after the alleged sexual assault is relevant to her claim for damages," but then proceeds to discuss the relevance of past traumatic experiences. [Doc. 166 at 12].

claim, to her claimed damages, and for impeachment. To the extent MHHA seeks to admit evidence of Graf's sexual behavior towards/with anyone other than Ogle, this would be governed by Rule 412 and thus the probative value of the evidence must substantially outweigh the danger of harm or unfair prejudice to Graf for it to be admissible.

Plaintiff's opposition brief is largely nonresponsive to MHHA's arguments. She contends there is no automatic right to place her sexual history before a jury simply because she is seeking emotional distress damages. She states that at trial, she may not choose to assert she was unable to engage in relationships, making evidence that she actually did irrelevant. She also points out that sex and a relationship are not the same thing, though it is not clear how this is relevant or disputed. Finally, Plaintiff argues that trauma survivors respond to assault in different ways. She contends that MHHA's "transparent effort to insist there is a one-size-fits-all reaction to trauma is the essence of rape culture," and summarily contends that the evidence is not probative. [Doc. 180 at 15].

This inflammatory rhetoric does little to aid the Court in resolving the evidentiary dispute before it. In her Third Amended Complaint, Plaintiff alleged that after the assault and termination, she "was too scared, tired, and numb to continue engaging in relationships with friends and family." [Doc. 50 at ¶ 37]. She alleged she "withdrew from society and her relationships almost completely, having little to no contact with others for months," and suffered periods of "intense disassociation from her life." [*Id.*]. So evidence that she began a new romantic and/or sexual relationship during the same time period is relevant to the very same harm she alleges in this lawsuit.

Moreover, Plaintiff has to show serious or severe mental injury to prevail on her NIED claim. Her Third Amended Complaint counts disassociation and withdrawal from society among

her mental and emotional injuries. So depending on the evidence presented at trial, Plaintiff's new relationship in late 2021 could be relevant. Moreover, evidence that an adult began a consensual sexual relationship with another adult is not particularly harmful or prejudicial. It is, nonetheless, private, and presumptively excluded under Rule 412 insofar as it relates to sexual conduct. There is no indication that MHHA seeks to introduce any detail regarding her subsequent sexual activity beyond when it occurred. Further detail would almost certainly be inadmissible. Because the admissibility of this evidence turns in large part on what other evidence is presented at trial, the Court will defer ruling on it at this time.

c. **Medical Records**

The parties do not dispute that some of Ms. Graf's medical records are relevant and admissible. Plaintiff believes a redacted and condensed version of these records is appropriate, arguing that evidence regarding Ms. Graf's prescriptions, medical conditions, and so forth does not relate to her claims or damages. Plaintiff agrees that medical records relating to the symptoms that arose out of the alleged assault and termination are relevant. Defendant argues that the "rule of completeness" compels admission of her full records.

Initially, it is not clear that Graf's medical records extensively reference her sexual history. So most of this dispute is likely not governed by Rule 412. The Court tends to agree that evidence of Plaintiff's unrelated medications, symptoms, and conditions is unlikely to be relevant and may well be prejudicial to Ms. Graf. Graf has not placed her entire medical history at issue simply by bringing this lawsuit. At the hearing of this matter, the parties represented that they may be able to resolve their dispute regarding the medical records. Accordingly, the parties will be ordered to confer and attempt to resolve their disagreement on this issue.

### d. History of Past Trauma

Here, too, the parties agree that some evidence that Graf experienced prior trauma is relevant and admissible. Graf intends to introduce expert testimony about the typical behaviors of people who have experienced trauma. As the Eighth Circuit has explained, this type of expert testimony is often allowed because "some post-abuse behavior, like delayed reporting and shifting stories, may seem counterintuitive." *United States v. Zephier*, 989 F.3d 629, 635 (8th Cir. 2021). Expert testimony "allow[s] jurors to evaluate the alleged victim's behavior and assess credibility by understanding how individuals generally react to . . . abuse." *Id.* (citation omitted, cleaned up). Where such evidence is admitted, it can be error to exclude evidence that the victim experienced prior trauma. *See id.* This is so because the expert testimony would bolster the alleged victim's credibility and also suggest causation. Given the unique symptomology trauma victims often suffer, evidence that the Plaintiff exhibited those symptoms without evidence that she had previously been abused might suggest to a jury that the assault by Ogle did in fact happen and caused all her damages.

Plaintiff recognizes as much. And MHHA's motion does not suggest that it intends to wade too deeply into the details of Plaintiff's prior abuse. A detailed inquiry would likely violate Rule 412, as it is clearly harmful to Ms. Graf and has little probative value. The parties appear to agree that the "basic factual details" of prior abuse are admissible. So they will be ordered to confer and attempt to resolve their dispute on this issue as well.

### IV. CONCLUSION

Accordingly, Defendant Morristown-Hamblen Hospital Association's Notice and Motion Pursuant to Federal Rule of Evidence 412 [Doc. 166] is **GRANTED IN PART** and **DENIED IN PART** as follows:

- The Motion is **GRANTED** as to Plaintiff's communications with Ogle, with the exception of the explicit videos. This evidence is not excluded under Rule 412. The parties are **ORDERED** to confer and submit a limiting instruction as to the proper scope of the jury's consideration of this evidence.

- The Motion is **DENIED** as to the videos Plaintiff sent to Ogle, which are inadmissible under Federal Rule of Evidence 412. The basic facts surrounding the existence of these videos are, however, admissible.

- The Motion is **DENIED** as to Plaintiff's private communications regarding her sexual preferences or predisposition, except her communications with Ogle. This evidence is inadmissible under Federal Rule of Evidence 412.

- The Court **DEFERS RULING** as to the admissibility of evidence of Plaintiff's sexual activity and new relationship in late 2021.

- The Court **DEFERS RULING** as to the admissibility of Plaintiff's medical records and history of prior trauma/abuse. The parties are **ORDERED** to confer and attempt to resolve their disputes as to this evidence.

It appears to the Court that the resolution of Defendant's motion resolves Plaintiff's Motions in Limine [Docs. 117 & 138]. Plaintiff's counsel confirmed this understanding at the hearing of this matter. Accordingly, Plaintiff's Motions in Limine [Docs. 117 & 138] are **DENIED AS MOOT**.

The parties **SHALL FILE** a joint status report on or before **July 19, 2024**, regarding these issues. The status report **SHALL** state whether they have reached an agreement as to the medical records and history of prior trauma. The status report **SHALL** attach the parties' jointly-proposed limiting instruction regarding Graf's communications with Ogle, which must also be sent in

Microsoft Word format to atchley_chambers@tned.uscourts.gov no later than **5:00 p.m.** on **July 19, 2024**.

The parties are strongly urged to work cooperatively to resolve these and other evidentiary disputes prior to trial. Should the parties settle any or all of the claims in this case or resolve any pending objections/motions, they **SHALL** notify the Court as soon as reasonably practicable.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**
